IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICHOLAS J. McINTOSH, #410358,     *

    Plaintiff,     *

v.     *     Civil Action No. PWG-16-1320

DIVISION OF CORRECTIONS, *et al.*     *

    Defendants.     ***

## MEMORANDUM OPINION

Plaintiff Nicolas J. McIntosh is an inmate presently confined at North Branch Correctional Institution in Cumberland, Maryland ("NBCI"). Pending before the Court is his Complaint filed pro se and pursuant to 42 U.S.C. §1983, which advances claims based on incidents that occurred during the time that he was incarcerated at Eastern Correctional Institution ("ECI") in Westover, Maryland. Former Warden Kathleen Green, the Division of Correction (DOC), Lt. Michael Daugherty, Rose Beteck, Ph.D, Sgt. John Bromley, C.O. II Brian Lee, C.O. II Paul Dyson, and C.O. II James Rogers[1] have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 16, along with a supporting memorandum, Defs.' Mem., ECF No. 16-1, which they later supplemented, Defs.' Supp. Mem., ECF No. 19. After notice was sent to McIntosh informing him that he may file an Opposition with affidavits and exhibits, ECF No. 17, he filed three Motions for Extensions of Time to file an Opposition, ECF Nos. 18, 23, 25, all of which I granted, ECF Nos. 20, 24, 26. McIntosh has chosen, however, not to respond, and Defendants' dispositive motion is unopposed. No hearing is necessary. Loc. R. 105.6 (D. Md.). After considering the pleadings, exhibits, and applicable law, I will dismiss the claims against Warden Green, the Division of Correction, and the

---

[1] The Clerk shall amend the docket to reflect Defendants' names as spelled in the Response.

correctional officers in their official capacities, none of which are amenable to suit. The Defendants are entitled to summary judgment on the remaining claims because McIntosh has produced no evidence in support of his allegations.

## Background

On February 19, 2016, inmates set fires on McIntosh's housing tier at ECI. Incident Report 2, Dep't. of Pub. Safety & Corr. Servs. Internal Investigative Div. Report 11, Defs.' Mot. Ex. 1, ECF No. 16-3 [hereinafter IID Report]. ECI determined that McIntosh threw paper and other materials to accelerate the fire, although he maintains that he had no role in the incident. Notice of Inmate Rule Violation, IID Report 42; Compl. 5.[2] After the fire was extinguished, Defendants Daugherty and Bromley removed McIntosh from his cell to escort him to a medical examination. Memorandum from Maj. John Flaig to Walter West, Acting Security Chief (Feb. 19, 2016), IID Report 19. Brenda Lucas, R.N examined McIntosh, who reported difficulty breathing from the smoke and fire retardants. Medical Records 9, Defs. Mot. Ex. 3, ECF No. 16-5. Lucas found the patient's lungs clear, and McIntosh reported feeling better once he calmed down and was released back into custody. *Id.*

After the medical examination Defendants Bromley, Lee, and Rogers took him to a cell in the Special Management Unit in Housing Unit 5 in the East Compound. Memorandum from Flaig to West, IID Report 19. There, McIntosh claims that the officers directed him to move to the back of the cell, face the wall, and get on his knees. Compl. 6, 11. When McIntosh refused to comply, Bromley allegedly said, "if you don't want to get on your kneels like a 'bitch' were gonna treat you like a 'bitch' " and forced him to the ground by using a shoulder lock, which caused him to hit his head on the wall. *Id.* at 11. The officers then allegedly stripped McIntosh

---

[2] Citations to the Complaint refer to CM/ECF page numbers, as the Complaint's pages are unnumbered and out of order.

while making degrading comments about the size of his genitalia. *Id.* McIntosh claims that Defendant Dyson recorded the incident with a hand-held video camera. *Id.* at 6.

McIntosh claims Bromley ignored his request to write an inmate statement to document use of excessive force and to file a Prison Rape Elimination Act ("PREA")[3] claim for sexual harassment and misconduct. *Id.* at 11–12. He also claims that his requests to speak with IID investigators and to file criminal charges were not heeded and that he received no medical treatment after the incident. *Id.* at 12. McIntosh filed Administrative Remedy Procedure (ARP) #ECI-0538-16, which was dismissed on procedural grounds because an inmate cannot pursue PREA issues through the ARP process.[4] Compl. 12. McIntosh faults Defendant Rose Beteck, the PREA Compliance Coordinator at ECI, for failing to contact the IID to investigate the incident, despite being made aware of his claim by ECI's ARP coordinator. *Id.* at 13.

But despite McIntosh's initial difficulties raising his claims with prison officials, he eventually succeeded in doing so by calling the PREA hotline, thereby triggering an IID inquiry. Incident Report, IID Report 11. After an investigation in which Officers Bromley and Lee denied that any sexual remarks were made towards McIntosh, Bromley Statement (June 3, 2016), IID Report 93; Bromley Statement (Sept. 21, 2016), IID Report 102; Lee Statement (June 3, 2016), IID Report 95; Lee Statement (Sept. 21, 2016), IID Report 100, the investigators concluded that McIntosh's allegations were unsubstantiated. Incident Report, IID Report 12.

McIntosh also maintains that corrections officials retaliated against him by denying him

---

[3] The statute is codified at 42 U.S.C. §§ 15601–15609.

[4] Maryland Department of Public Safety and Correctional Services Operating Procedure Statement ("OPS") 185.0002 prohibits "the use of an informal resolution process or ARP to resolve complaints of rape, sexual assault, sexual harassment, sexual abuse misconduct, inmate on inmate sexual conduct, or other areas afforded protections by standards established under the authority of the Prison Rape Elimination Act (PREA), and related Department procedures."

his prescribed medical diet. Compl. 12–13. He also states that he suffers from depression and trauma as a result of the incident, resulting in panic attacks. *Id.* He is under the care of a psychologist and has been prescribed psychotropic medication. Medical Records 20–24. As redress, McIntosh requests punitive damages and declaratory and injunctive relief, including his transfer from ECI, although he has already been transferred to NCBI. Compl. 8–9.

## Standard of Review

### Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The claims against defendants the Division of Correction, former Warden Green, and the claims for monetary

damages against Defendants in their official capacities will be reviewed under this standard.

## Motion for Summary Judgment

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## **Discussion**

Defendants argue they are entitled to dismissal or summary judgment in their favor based on respondeat superior, sovereign immunity, and because McIntosh has furnished no evidence in support of his claims.[5]

## Respondeat Superior

Liability is imposed under § 1983 on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights . . . ." 42 U.S.C. § 1983. The statute

---

[5] Defendants also raise a qualified immunity defense, but because I find that McIntosh has not produced evidence of any constitutional violations, I will not address the issue.

5

requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690 (1978); *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (stating that, for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights") (quoting *Bennett v. Gravelle,* 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd,* 451 F.2d 1011 (4th Cir. 1971)). Thus, an individual cannot be held liable under § 1983 under a theory of respondeat superior. *See Monell,* 436 U.S. at 690; *Love–Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004).

> In a § 1983 action, liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " Supervisory liability under § 1983 must be supported with evidence: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

McIntosh does not claim that then Warden Kathleen Green was personally involved in the matters alleged, but rather seeks to hold her liable in her supervisory capacity, Compl. 3, and he does not plead that Green had any awareness of the matters at issue let alone that she was deliberately indifferent to her subordinates' alleged conduct. Accordingly, the claims against Green will be dismissed.

## Sovereign Immunity

McIntosh is suing correctional officers and staff in both their official and individual

6

capacities. Compl. 4. McIntosh has also named the Division of Correction ("DOC"), an agency within the State of Maryland as a Defendant.

The Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Although state officials are literally persons, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). Thus, states and their officers, when sued in their official capacities, are not "persons" subject to suit for money damages under § 1983. *Id.*

Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state court, *see* Md. Code Ann., State Gov't § 12-104, it has not waived its immunity under the Eleventh Amendment to suit in federal court. McIntosh's claims for monetary damages against individual Defendants in their official capacities are barred by the Eleventh Amendment, *see Will*, 491 U.S. at 71; *Pennhurst State Sch. & Hosp*, 465 U.S. at 101–02, and will be dismissed. For the same reason, Plaintiff's claim against the DOC, a state agency, will also be dismissed.

### Eighth Amendment Claims

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

A convicted inmate's claim of use of excessive physical force is analyzed in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 7–9 (1992); *Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). To establish an Eighth Amendment violation, a plaintiff must demonstrate that the prison officials "acted with a sufficiently culpable state of mind (subjective component)" and that "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In making an excessive-use-of-force claim, an inmate must meet a heavy burden to satisfy the subjective component by demonstrating that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good-faith effort to maintain or restore discipline." *Whitley*, 475 U.S. at 320–21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

To establish an Eighth Amendment claim for denial of medical care, an inmate must demonstrate that the defendants' actions or their failure to act amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* Thus, a deliberate indifference claim has both an objective component—that there objectively exists a serious medical condition

and an excessive risk to the inmate's health and safety—and a subjective component— that the official subjectively knew of the condition and risk. *Farmer*, 511 U.S. at 834, 837. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Id.* 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.' " *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

McIntosh alleges Bromley and Lee used excessive force when they attempted to drop him to his knees in preparation for the strip search. Compl. 6, 11. Defendants uniformly refute his claim in verified and unopposed records. Bromley Decl. ¶ 4, Defs.' Supp. Mem. Ex. 1, ECF No. 19-1; Lee Decl. ¶ 4, Defs.' Supp. Mem., ECF No. 19-2. And Defendants' statements made in response to the IID investigation uniformly state there was no use of excessive force. Lee Statement (Sept. 21, 2016), IID Report 100; Sturgis Statement (Sept. 22, 2016), IID Report 101; Bromely Statement (Sept. 21, 2016), IID Report 102 ("McIntosh was fully cooperative with the strip search."). Contrary to McIntosh's assertion, he refused to provide a statement on the day of the incident. Statement of Inmate (Feb. 19, 2016), IID Report 58 ("Inmate [McIntosh] refused to give a statement."). No use-of-force report was ever filed in connection with the events of February 19, 2016. Incident Report, IID Report 11. Even when the facts are viewed in the light most favorable to McIntosh, I find that no reasonable jury could find from the evidence submitted that Defendants used excessive force against McIntosh.

Similarly, McIntosh provides no evidence to support his allegation that ECI officials

9

were deliberately indifferent to his medical needs. McIntosh had medical examinations on February 20, 22, and 29, 2016. Medical Records 12–17, 20–23. Despite being examined four times in the immediate aftermath of the February 19 incident, he did not complain of the head injury that he allegedly suffered and was instead treated for vomiting, chest pain, mood swings, and an episode of non-responsiveness that he attributed to a migraine and panic attack. *Id.* Beyond those four visits, his records indicate that he had several other medical visits in 2016 to address gluten-intolerance issues, an old stab wound, dental hygiene, and psychological issues. *Id.* at 27–32, 37–45. He was also evaluated in connection with his PREA claims in March 2016. *Id.* at 33–35. There is no evidence that Defendants acted with deliberate indifference by denying McIntosh care for a serious medical need. Accordingly, Defendants are entitled to summary judgment on this claim.

<u>Sexual and Verbal Harassment</u>

To the extent McIntosh seeks to hold Defendants liable under the PREA, there is no basis for a private cause of action under § 1983 to enforce an alleged violation of the statute. "Section 1983 itself creates no rights; rather it provides 'a method for vindicating federal rights elsewhere conferred.'" *Kendall v. City of Chesapeake*, 174 F.3d 437, 440 (4th Cir. 1999) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002). "Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue corrections officials under the Act." *Williams v. Dovey*, No. DKC-15-1891, 2016 WL 810707, at *7 (D. Md. March 2, 2016). Rather, the law authorizes grant money and commissions a study to address the issue of rape in prisons. *Id.*

Moreover, McIntosh's allegations of sexual and verbal harassment were investigated and found to be unsubstantiated. Incident Report, IID Report 12. The IID officer who conducted the investigation noted that McIntosh, who told the investigator that he wanted his good conduct credits returned to him, raised his allegations at about the same time he was sanctioned for participating in the fire incident. *Id.* at 11. During the course of the investigation, Defendants Bromley and Lee both denied that they made any sexual remarks to McIntosh. Bromley Statement (June 3, 2016), IID Report 93; Bromley Statement (Sept. 21, 2016), IID Report 102; Lee Statement (June 3, 2016), IID Report 95; Lee Statement (Sept. 21, 2016), IID Report 100. Sturgis Statement (Sept. 21, 2016), IID Report 100. McIntosh also seeks to hold Dr. Beteck culpable for administration of the institution's PREA procedures, yet he fails to specify in what manner that process was improperly executed or identify an abridgement of a constitutional provision or federal law. Compl. 13.

McIntosh provides no evidence to refute Defendants' exhibits indicating that no sexual assault or harassment occurred. Accordingly, Defendants are entitled to summary judgment on these claims.

Retaliation

McIntosh summarily claims that he has been "retaliated against by the department" since the incident, claiming that correctional staff have by failed to provide him a special diet. Compl. 12. To establish a retaliation claim against prison officials, an inmate must show that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). McIntosh does not identify the nature of his protected right at issue or specify the individuals who allegedly retaliated against him. *See* Compl. 12–13. The record shows that McIntosh's request for a

special diet for self-reported celiac disease precedes the February 19, 2016 incident. Medical Records 2. On March 9, 2016, a medical provider prescribed a special "CV" (cardiovascular) diet for McIntosh. *Id.* at 27–29. He was told he would need to address the "gluten-free" aspect with custodial staff. *Id.* McIntosh, however, does not claim that he discussed his diet with the appropriate staff or explain how Defendants hindered or precluded him from receiving a special diet. Nor does he explain any causal connection between his efforts to exercise his rights and the supposed obstacles he faced in securing his desired diet. As there is no evidence to support this retaliation claim, summary judgment will be entered in favor of Defendants on this claim.

## Conclusion

Warden Green, the Division Correction and the correctional staff (in their official capacities) are not amenable to suit based on the facts alleged. The claims against them are therefore dismissed. And McIntosh has produced no evidence in support of his claims against correctional staff in their individual capacities. He has not opposed the Defendants' Motion, while the Defendants have put forth evidence that casts doubt on all of McIntosh's claims. Accordingly, I will enter judgment in favor of the Defendants on all of the remaining claims.

8/7/17
Date

Paul W. Grimm
United States District Judge